**Jacob FELDSTEIN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 19116.**

United States Court of Appeals Ninth Circuit.

Oct. 28, 1965.

Avram Salkin, Hochman & Salkin, Beverly Hills, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Donald A. Fareed, Asst. U. S. Atty., Chief, Civil Sec., Dzintra I. Janavs, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before CHAMBERS, KOELSCH and BROWNING, Circuit Judges.

CHAMBERS, Circuit Judge:

Feldstein is the guarantor of a loan of $125,000 made by the Small Business Administration to the now bankrupt Ace Offset Printing Co., Inc. Bankruptcy was a condition maturing the note and the guaranty.

The guaranty was about as unconditional as one could make it. In pertinent part, it reads as follows:

"The undersigned [Feldstein] hereby grants to SBA full power, in its uncontrolled discretion and without notice to the undersigned * * * to deal in any manner with the Liabilities and the collateral, including but without limiting the generality of the foregoing, the following powers:

\*     \*     \*     \*     \*     \*

"(b) To enter into any agreement of forbearance with respect to all or any part of the Liabilities, or with respect to all or any part of the collateral, and to change the terms of any such agreement;

"(c) To forbear from calling for additional collateral to secure any of the Liabilities or to secure any obligation comprised in the collateral;

"(d) To consent to the substitution, exchange, or release of all or any part of the collateral, whether

or not the collateral, if any, received by SBA upon any such substitution, exchange, or release shall be of the same or of a different character or value than the collateral surrendered by SBA;

"(e) In the event of the nonpayment when due, whether by acceleration or otherwise, of any of the Liabilities, or in the event of default in the performance of any obligation comprised in the collateral, to realize on the collateral or any part thereof * * *, at any public or private sale or sales, without demand, advertisement or notice of the time or place of sale or any adjournment thereof, or by foreclosure or otherwise, or to forbear from realizing thereon, all as SBA in its uncontrolled discretion may deem proper, * * * The obligations of the undersigned hereunder shall not be released, discharged or in any way affected, nor shall the undersigned have any rights or recourse against SBA, by reason of any action SBA may take or omit to take under the foregoing powers.

"In case the Debtor shall fail to pay all or any part of the Liabilities when due, whether by acceleration or otherwise, according to the terms of said note, the undersigned, immediately upon the written demand of SBA, will pay to SBA the amount due and unpaid by the Debtor as aforesaid in like manner as if such amount constituted the direct and primary obligation of the undersigned. SBA shall not be required, prior to any such demand on, or payment by, the undersigned, to make any demand upon or pursue or exhaust any of its rights or remedies against the Debtor or others with respect to the payment of any of the Liabilities, or to pursue or exhaust any of its rights or remedies with respect to any part of the collateral. The undersigned shall have no right of subrogation whatsoever with respect to the Liabil-

ities or the collateral unless and until SBA shall have received full payment of all the Liabilities.

"The obligations of the undersigned hereunder * * * shall not be released, discharged or in any way affected, nor shall the undersigned have any rights against SBA: by reason of the fact that any of the collateral may be in default at the time of acceptance thereof by SBA or later; nor by reason of the fact that a valid lien in any of the collateral may not be conveyed to, or created in favor of, SBA; nor by reason of the fact that any of the collateral may be subject to equities or defenses or claims in favor of others or may be invalid or defective in any way; nor by reason of the fact that any of the Liabilities may be invalid for any reason whatsoever; nor by reason of the fact that the value of any of the collateral, or the financial condition of the Debtor or of any obligor under or guarantor of any of the collateral, may not have been correctly estimated or may have changed or may hereafter change; nor by reason of any deterioration, waste, or loss by fire, theft, or otherwise of any of the collateral unless such deterioration, waste, or loss be caused by the willful act or willful failure to act of SBA."

In due time, the government sought judgment against Feldstein, and a motion for summary judgment was granted against him.

Before summary judgment was granted Feldstein sought to amend his answer to assert defenses:

1. Unilateral mistake.

a. In that when Feldstein executed the guaranty of the loan from SBA to Ace he was acting under the mistaken belief that the principal obligation was validly secured by Ace's fixtures and equipment worth over $200,000;

b. That the SBA knew or should have known that the principal obligation was not validly secured;

c. That the principal obligation was not validly secured and that Feldstein would not have executed the guaranty had he known that the loan was in fact unsecured.

2. Mutual mistake in that both parties thought the machinery and equipment secured the principal obligation when, in fact, the obligation was not so secured.

Leave to file the amended answer was denied. If this was error, the granting of the summary judgment was error and we should reverse. This we do.

If, under the amended answer, Feldstein could have possibly proved a defense, the proposed amendment was timely enough and should have been granted. We do not say he would have prevailed, but it is conceivable.

Further, in his first answer and in the proposed amended answer, Feldstein asserts as a defense that SBA intentionally released some of the collateral and wilfully failed to use due care for the preservation of it.

In connection with the allegations of mistake, we find no copy of the chattel mortgage. Naturally, we wonder why. The Ace Company note and the guaranty of Feldstein are dated February 12, 1959. Wasn't the chattel mortgage dated and executed contemporaneously with the other documents? Wasn't the mortgage, as far as it had gone, good so far? Are Feldstein's allegations of contemporary mistake really something that occurred after execution which prevented the lien from coming into existence?

At the threshold, we are confronted with the question of whether California state law applies or whether the federal court should fashion a body of law on federal loan instruments. But we pass over it, because we think the result should be the same.

Feldstein should recognize that the law of rescission for mistake is always much more favorable when the status quo of the parties can be restored. Here such a thing is improbable.

After reading the affidavits and counter affidavits on the motion for summary judgment, we still find the situation a little fuzzy as to just what were the circumstances surrounding the release from the mortgage of collateral after the execution of the mortgage. We have seen nothing yet to indicate any wilfulness in the release, but we think Feldstein was entitled to try to prove on a trial something on his allegation of wilfulness.

Also, while the facts of the alleged mistake and the law thereon may come to nothing for him, we think he was entitled to develop that. See Restatement of Contracts, Sections 500–510, 480–487.

The judgment is vacated for proceedings consistent with this opinion.